IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

NATHANIAL H.[1]

       Plaintiff,

vs.

KILIO KIJAKAZI, Acting Commissioner,
Social Security Administration,

       Defendant.

Case No. 6:19-cv-01280-AA
**OPINION AND ORDER**

---

AIKEN, District Judge:

      Plaintiff Nathanial H. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

On August 18, 2015, plaintiff filed a claim for DIB, alleging disability since December 29, 2014, Tr. 159–60, due to a combination of impairments, including stenosis of the lumbar spine, bilateral hip impairment, status post bilateral arthroscopic surgery, migraine headaches, post-traumatic stress disorder ("PTSD"), and major depressive disorder, Pl.'s Br. (doc. 12) 2. Unfavorable initial and reconsidered determinations were affirmed in a decision by an Administrative Law Judge ("ALJ") on October 20, 2016. Tr. 16–28. After the Appeals Council declined review, plaintiff appealed to the United States District Court for the District of Oregon. *Id.* at 679–83. On May 4, 2018, District Court Judge Hernández remanded the case to the hearings level for further consideration of the evidence.[2] *Id.* at 692–723. While the above claim was pending before the district court, plaintiff filed a subsequent claim for DIB on February 21, 2017, in which the agency found that plaintiff had been disabled since October 21, 2016. *Id.* at 795–800. On remand from the district court, a separate ALJ held a new hearing to determine whether plaintiff had been disabled between the alleged onset date and the agency's subsequent favorable finding. *Id.* at 585–605. On April 15, 2019, the ALJ issued an unfavorable finding. *Id.* This appeal followed.

## STANDARDS

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in

---

[2] *See Nathanial H. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-000481-HZ.

the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted).  To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## COMMISSIONER'S DECISION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity?  (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations?  (4) Is the claimant able to perform any work that he or she has done in the past? And (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724–25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The burden of proof falls to the claimant at steps one through four, and with the Commissioner at step five. 20 C.F.R. § 404.1520(a)(4); 416.920(a); *Bustamante*, 262 F.3d at 953–54. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

Here, the ALJ found that plaintiff was not disabled between the alleged onset date of December 29, 2014, and the agency's subsequent favorable finding on October 21, 2016. Tr. 604–05. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 591. At step two, the ALJ found that plaintiff suffered from the following severe impairments: lumbar spine neural foraminal stenosis; bilateral hip labral tear; status post hip arthroscopy; headaches/migraines; PTSD; and major depressive disorder. *Id.* At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's RFC and found that plaintiff retained the capacity to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a), with

additional physical and mental limitations.  Tr. 593.  With respect to physical limitations, the ALJ found that plaintiff

> was limited to lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently. He was limited to standing and/or walking a total of two hours, and sitting for a total of six hours, in an eight-hour day, with normal breaks. The claimant was limited to no more than occasional climbing of ramps or stairs, and no climbing of ladders, ropes, or scaffolds.

*Id*.  The ALJ also found that plaintiff "was limited to understanding and carrying out simple routine one or two-step instructions.  He could tolerate no more than occasional and brief contact with the general public and coworkers." *Id*.

At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work as a "Tractor-Trailer Truck Driver," Dictionary of Occupational Titles ("DOT") code 904.383-010, and a combination position as a "Dispatcher," DOT code 249.167-014.  Tr. 603.  At step five, the ALJ found that based on plaintiff's age, education, work experience, and RFC, plaintiff could perform work that exists in significant numbers in the national economy, including "Assembler," DOT code 734.687-018, "Table Worker," DOT code 739.687-182, and "Waxer," DOT code 779.687-038. Tr. 604.  Accordingly, the ALJ found that plaintiff was not disabled and denied his application.  Tr. 604–05.

## DISCUSSION

On appeal, plaintiff contends that the ALJ (1) erred by improperly rejecting the medical opinion of plaintiff's physical therapist, John Breuer, regarding plaintiff's sitting limitations; and (2) erred at step five by failing to pose hypothetical questions to the vocational expert ("VE") related to plaintiff's migraines and Breuer's sitting

opinion.  Pl.'s Br. 11, 14.  Plaintiff also challenges the decision on constitutional grounds, arguing that an unconstitutional removal provision in the Act rendered the Commissioner's final decision constitutionally defective.  Pl.'s Suppl. (doc. 17) 3.  As explained below, the ALJ did not err in discounting Breuer's opinion testimony or at step five, and plaintiff's constitutional challenge does not present grounds to reverse and remand the Commissioner's decision.

## I.    *Medical Opinion Evidence*

Plaintiff alleges that the ALJ committed a reversible error by improperly rejecting the opinion of plaintiff's examining physical therapist, John Breuer.  Pl.'s Br. 12–14.  Specifically, plaintiff asserts that the ALJ failed to explain why the RFC did not include Breuer's opinion that plaintiff was limited to four total hours of sitting per workday.  *Id.* at 13.  In response, the Commissioner argues that the ALJ reasonably discounted Breuer's opinion in favor of the state agency medical consultants ("state doctors"), whose findings were more consistent with the record. Def.'s Br. (doc. 15) 5–6.

Breuer opined that plaintiff could stand for 20 minutes at a time for a total of 4 hours in an 8-hour day and sit for 60 minutes at a time for a total of 4 hours in an 8-hour day.  Tr. 575.  The ALJ assigned partial weight to Breuer's overall evaluation, *see* Tr. 573, but did not include these sitting limitations in the RFC.  The ALJ reasoned that the overall record supported *greater* limitations for plaintiff.  Tr. 595– 96.  Specifically, the ALJ noted that the findings of the state doctors "limited the claimant to sedentary standing, walking, and lifting[,]" which the ALJ determined

were "more consistent with hip and lumbar disorders, and to which greater weight is owed." Tr. 595–96.

Per Social Security Rule 06-03p, 2006, as a physical therapist Breuer is considered a "non-acceptable" or "other" medical source.  For initial applications filed prior to March 27, 2017, like the present case, an ALJ may not reject the testimony of "non-acceptable" or "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006).   To reject the testimony of "other" medical sources, an ALJ must give "reasons germane to each witness." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).  Inconsistency with medical evidence is considered a germane reason to reject "other" medical opinions. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  The record supports the ALJ's reasoning, which constitutes a germane reason to discount Breuer's opinion.

Further, at the hearing, the ALJ and plaintiff's counsel agreed that Breuer's sitting/standing limitation would amount to "a mix between sedentary and light work, and" is, therefore, less limiting than the sedentary RFC that the ALJ ultimately assessed.  Tr. 649–51 (Plaintiff's counsel responded with, "Yeah. Right. . . . Maybe that's why we didn't ask it at . . . that's why . . . we missed [it] the first time," to which—according to the record—laughter ensued).  Thus, the ALJ did not err in rejecting portions of Breuer's opinion.

## II.    *Step-Five Finding*

Plaintiff also alleges that the ALJ's step five finding is not supported by substantial evidence because the hypothetical questions that the ALJ posed to the VE did not include limitations related to plaintiff's migraines or the sitting limitations assessed by Breuer.  Pl.'s Br. 15–16.  "Hypothetical questions posed to the [VE] must set out *all* the limitations and restrictions of the particular claimant," and "[i]f the assumptions in the hypothetical are not supported by the record, the opinion of the [VE] that claimant has a residual working capacity has no evidentiary value." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Here, however, the ALJ rejected plaintiff's symptom testimony, including specific testimony about his migraines, and Breuer's opinions on plaintiff's sitting limitations.  Tr. 595–97.  Plaintiff does not assign error to the ALJ's treatment of his subjective symptom testimony and, as discussed above, the ALJ did not err in rejecting Breuer's sitting limitation opinion.

Plaintiff asserts that the ALJ made a "low-end estimate of the frequency of [plaintiff's] migraines" that plaintiff would experience debilitating headaches one to two times per month, based on the ALJ's statement that plaintiff reported "he needed the sumatriptan headache medication only one or two times each month when ibuprofen was ineffective."  Pl.'s Br. 14–15 (citing a paraphrasing Tr. 596).  But in context, the ALJ did not credit plaintiff's testimony that he used sumatriptan once or twice a month, let alone find that that level of reliance on the medication would mean that plaintiff would likely miss work once or twice a month.  Instead, the ALJ simply observed that plaintiff's testimony "indicates that [his headaches] are largely

controlled with medication" as one reason, among many, that the ALJ rejected plaintiff's migraine symptom testimony, which is itself unchallenged. *See* Tr. 596 (reasoning that plaintiff's testimony regarding medication was inconsistent with his allegations that he experienced "'debilitating' headaches once a week which left him unable to get out of bed" and that "he had headaches at least three to four times a week"), 597 (noting lack of evidence of plaintiff's headache's effect on his physical or exertional abilities or his "cessation of work[,]" lack of references to headaches in his medical records, and lack of specialized headache treatment), 594–95 (concluding, generally, that plaintiff's work history undermined his claims of debilitating symptoms).

In sum, the ALJ did not err by not including Breuer's opined sitting limitations or any migraine-related limitations in hypotheticals posed to the VE.

## III.   *Constitutional Claim*

Plaintiff asserts that the Court must remand this case because the Act's provision governing removal of the Commissioner, 42 U.S.C. § 902(a)(3), violates the separation of powers.  Plaintiff contends that the removal provision renders the Commissioner's appointment and tenure unconstitutional and invalidates the authority the Commissioner purported to delegate to the ALJ.  Pl.'s Suppl. 1, 3.  The Commissioner concedes that section 902(a)(3) "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause."  Def.'s Resp. to Pl.'s Suppl. (doc. 18) 2.  For the reasons below, the Court accepts the Commissioner's concession, but finds that the

unconstitutional provision did not deprive the Commissioner of the authority to issue a decision on plaintiff's claim and did not result in harm to plaintiff requiring reversal of the ALJ's decision.

Plaintiff argues that two recent Supreme Court decisions—*Selia Law v. Consumer Financial Protection Bureau*, ___U.S.____, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, ___U.S.___, 141 S. Ct. 1761 (2021)—compel the conclusion that section 902(a)(3) violations the separation of powers.  In *Selia Law*, the Supreme Court held that the Dodd-Frank Act's provision limiting the President's power to remove the Director of the Consumer Financial Protection Bureau ("CFPB") to instances of "inefficiency, neglect of duty, or malfeasance," 12 U.S.C. § 5491(c)(3), violates the separation of powers.  140 S. Ct. at 2197. The Court reasoned that an "independent agency led by a single Director . . . lacks a foundation in historical practice and clashes with constitutional structure by concentrating power in a unilateral actor insulated from Presidential control."  *Id.* at 2192.

In *Collins*, the Supreme Court observed that its "decision in *Selia Law* [was] all but dispositive" when concluding that the Housing and Economic Recovery Act's ("Recovery Act") provision limiting the President's power to remove the Director of the Federal Housing Finance Agency ("FHFA") only "for cause," 12 U.S.C. § 4512(b)(2), violated the separation of powers.  141 S. Ct. at 1783–84.  The Court reasoned: "A straightforward application of our reasoning in *Selia Law* dictates the result here.  The FHFA (like the CFPB) is an agency led by a single Director, and the

Recovery Act (like the Dodd-Frank Act) restricts the President's removal power." *Id.*
at 1784.

That reasoning dictates the same result here.  The Social Security
Administration (like the CFPB and FHFA) is an agency led by a single head, the
Commissioner, and the Social Security Act (like the Dodd-Frank Act and Recovery
Act) restricts the President's removal power.  The Court, therefore, concludes that
the removal restriction in section 902(a)(3) violates the separation of powers.  *See*
Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's
Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).  But this unconstitutional
removal restriction does not require reversal and remand here.

First, although the removal restriction in section 902(a)(3) is unconstitutional
and unenforceable, that conclusion does not affect the validity of the remainder of the
Act, and the Social Security Administration, thus, remains fully functional. *See id.* at
*15– 17 (concluding that the removal restriction is severable and citing *Selia Law*,
140 S. Ct. at 2209–10).

Second, plaintiff has failed to show that the official who headed the Social
Security Administration at all relevant times was unconstitutionally appointed or
otherwise lacked the ability to delegate decision-making to the ALJ and Appeals
Council who considered plaintiff's case.  As the Commissioner notes, the ALJ who
adjudicated plaintiff's claim on April 18, 2019, held office under an appointment that
was ratified in July 2018 by then-Acting Commissioner Nancy Berryhill.  Def.'s Resp.
to Suppl. 4.  And, as plaintiff concedes, and the Commissioner's decision in this case

became final two days before former Commissioner Andrew Saul assumed office. Pl.'s Reply to Suppl. (doc. 19) 1. The Commissioner contends that Acting Commissioner Berryhill "enjoyed no statutory tenure protection[,]" but even assuming the removal restriction applies to Acting Commissioners, its invalidity does not render the Acting Commissioner's appointment, which is governed by section 902(b)(3), invalid or otherwise "strip the [Acting Commissioner] of the power to undertake the other responsibilities of [their] office." *Collins*, 141 S. Ct. at 1788 n.23; *see also id.* at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the [challenged] actions taken by the FHFA . . . as void."). Thus, plaintiff's insistence that the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044, mandates a new hearing before a new ALJ is incorrect. *See Collins*, 141 S. Ct. at 1788 (distinguishing *Lucia*'s remedy for appointments violations with unconstitutional removal restrictions).

Finally, plaintiff cannot show, as he must to obtain any relief on his claim, that the unconstitutional removal restriction in section 902(a)(3) "actually caused [him] harm." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (citing *Collins*, 141 S. Ct. at 1788–89.[3] Plaintiff asserts that he suffered harm allegedly

---

[3] Plaintiff contends that because it is *possible* that the unconstitutional removal restriction harmed him, the case should be remanded for a hearing before an ALJ to determine whether he suffered compensable harm. Pl.'s Reply to Suppl. 3–4. Plaintiff emphasizes that *Collins* remanded for further factual development on the issue of harm. But this Court, like the lower federal courts to which the Supreme Court remanded *Collins*, is the appropriate venue for further factual development on the issue of harm, not a Social Security adjudication. *See Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021)

caused by President Biden's perceived inability to remove Commissioner Saul until *Collins* was decided. But, as plaintiff concedes, Commissioner Saul did not even take office until *after* the Commissioner's decision on his claim became final. Thus, there is no way that the President's inability to remove Commissioner Saul affected the determination of plaintiff's claim.

Plaintiff also argues that he suffered the following injuries: (1) deprivation of his right to a constitutional hearing and adjudication before an ALJ, (2) deprivation of his right to a constitutional decision from an ALJ, (3) an unfavorable decision from a "constitutionally illicit ALJ adjudication process[,]" and (4) deprivation of his right to a constitutionally valid adjudication process from the Appeals Council. Pl.'s Reply to Suppl. 4–5. But, as explained above, the unconstitutional nature of the removal restriction in section 902(a)(3) did not automatically invalidate the actions taken by the Acting Commissioner or the Social Security Administration during the Acting Commissioner's tenure. Plaintiff relies on statements from district court decisions denying the Commissioner's motions to dismiss similar constitutional claims for lack of standing. *Id.* (citing *Sylvia v. Kijakazi*, No. 5:221-CV-076-M-BQ, 2021 WL 4692293, *4 (N.D. Tex. Sep. 13, 2021); *Albert v. Kijakazi*, No. 1:21-cv-0004-HRH, 2021 WL 3424268, *5 (D. Alaska Aug. 5, 2021); *Tafoya v. Kijakazi*, ___ F. Supp. 3d ___, 2021 WL 3269640, *5 (D. Colo. Jul. 29, 2021)). But, as the Supreme Court recognized in *Collins*, causation for purposes of standing and causation for purposes of the scope of the remedy are separate inquires. *Compare* 141 S. Ct. at 1779 ("[F]or purposes of

Observing that "agency adjudications are generally ill suited to address structural constitutional challenges").

traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." (Internal quotation marks omitted.)) *with id.* at 1788–89 (observing that the plaintiffs may be entitled to retrospective relief if they can show that the unconstitutional provision inflicted compensable harm); *see also Collins*, 141 S. Ct. at 1787 n.24 ("What we said about standing in *Selia Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional provision. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action taken by such an officer and that the plaintiff alleges was void. . . . But that holding does not mean that actions taken by such and officer are void *ab initio* and must be undone."). Similarly, in *Tafoya*, the district court noted that "the question before me is one of standing, and thus does not implicate the merits." ___ F. Supp. 3d. at ___, 2021 WL 3269640 at *3. The district court also observed that, despite the plaintiff's allegation that the actions of the ALJs were void, which the court was obligated to accept as true for purposes of standing, under the Supreme Court's reasoning in *Collins*, it "may be well that, even if the removal provisions of the Social Security Act are unconstitutional, the agency's ALJs still had authority to issue disability determinations." *Id.* at *3 n.6. And indeed, that is exactly what this Court concluded above.[4] Thus, although the removal restriction in section 902(a)(3)

---

[4] Plaintiff does not cite, nor has this court found, any decision from another court that has reached a different conclusion on the merits of a plaintiff's constitutional claim regarding section 902(a)(3).

violates the separation of powers, it does not independently require the Court to reverse the ALJ's decision in this case.

## CONCLUSION

The Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this  15th  day of December 2021.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge